Rhonda L. HUMMEL, Plaintiff,

v.

POSTMASTER GENERAL of the UNIT-
ED STATES, sued as: Marvin Run-
yon, Defendant.

No. 1:98–CV–135.

United States District Court,
W.D. Michigan,
Southern Division.

Sept. 4, 1998.

Nelson P. Miller, Fajen & Miller, Grand Haven, MI, for Plaintiff.

Daniel M. LaVille, Asst. U.S. Attorney, Michael H. Dettmer, United States Attorney, Grand Rapids, MI, for Defendant.

## OPINION

QUIST, District Judge.

Plaintiff Rhonda Hummel ("Hummel") filed this action alleging retaliatory failure to train, which allegedly resulted in failure to promote and failure to grant overtime, and sex-based discrimination. Defendant Marvin Runyon, Postmaster General of the United States ("Government"), answered through the instant motion to dismiss or in the alternative, motion for summary judgment, alleging that Hummel's claims are all time-barred.

### Facts

Hummel has been a distribution clerk for the Benton Harbor Post Office since 1985. In 1987, she reported being the victim of a sexual assault by then-Benton Harbor Postmaster William Truehart ("Truehart"). After an investigation, Truehart sustained disciplinary action. According to Hummel, until she "reported her sexual assault and the postmaster was transferred as a consequence, [she] had occasionally been permit-

ted to serve as a '204B,' replacing her supervisor in the supervisor's absence, as a first step on the career path to becoming an officer in charge (OIC), supervisor, and on up the ranks." (Pl.'s Resp. Br. at 2.)

Hummel presented evidence that thereafter and throughout her employment, she made repeated verbal and written requests for, but was denied, training in the areas of accountables, business reply, finance, "RPW tests," [1] window service, and central forwarding system. (*See* Pl.'s Ex. C; Hummel Aff. ¶¶ 5–7, attached to Pl.'s Resp. Br.) The only rebuttal the Court could find was the Government's statement to Hummel's EEO counselor that "emplouee [sic] has been given training in other clerk duties." (Def.'s Ex. 2 at 3.) The Government does not mention this statement in its brief, and the Court has found no evidence in the record that "other clerk duties" differ from Hummel's duties as a distribution clerk or encompass the areas in which Hummel requested training. Hummel presented evidence that she made a written request for training as recently as November 7, 1997. (*See* Pl.'s Ex. C.)

Hummel further presented evidence that training "requests by similarly situated employees including employees junior to me, were granted." (Hummel Aff. ¶ 6, attached to Pl.'s Resp. Br.) As above, the only rebuttal the Court could find was the Government's statement to Hummel's EEO counselor that "there is no discrimination" and that "counselee is treated no differently than all other employees." (Def.'s Ex. 2 at 3.) Hummel presented evidence that both promotions and overtime opportunities are dependent on the extent of an employee's training.

Hummel alleges that after ten years of denied requests, on October 15, 1997, one of her former supervisors, George Waddell ("Waddell"), informed her for the first time of a standing order against giving any training to Hummel. (*See* Pl.'s Exs. D, F.) She presented evidence that two "Officers in Charge" ("OIC"), or acting postmasters, ordered Waddell not "to give Rhonda Hummel any training on anything because whe [sic] was a trouble maker in the office" for having reported Truehart's assault. (Waddell State-

ment, Pl.'s Ex. G.) Waddell obeyed these orders during his tenure as Hummel's supervisor from the time of her sexual assault charges to his retirement in August 1993. (*See id.*) Hummel presented evidence that she submitted and was denied at least three written requests to Waddell during that time period. (*See* Ex. C.)

After learning of this standing order, Hummel sought EEO counseling for claims of retaliatory failure to train, promote, and award overtime on November 3, 1997. After final contact with her counselor on December 2, 1997, Hummel filed an EEO Complaint of Discrimination on December 8, 1997. The United States Postal Service dismissed her complaint as untimely on January 23, 1998, and she filed this action on February 12, 1998.

### Standard

The Government filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) or in the alternative for summary judgment pursuant to Fed.R.Civ.P. 56. Because the parties have presented matters outside the pleadings, the Court will treat the motion as arising under Fed.R.Civ.P. 56. *See* Fed.R.Civ.P. 12(b); *Granger v. Marek*, 583 F.2d 781, 785 (6th Cir.1978).

■ Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *Id.* at 248, 106 S.Ct. at 2510. The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* This standard requires the non-moving party to present more than a scintilla of evidence to defeat the motion. *Id.* at 251,

---

**1.** Hummel does not explain the term "RPW tests."

106 S.Ct. at 2511 (citing *Improvement Co. v. Munson,* 14 Wall. 442, 448, 20 L.Ed. 867 (1872)).

A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Id.; Frank v. D'Ambrosi,* 4 F.3d 1378, 1384 (6th Cir.1993). The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir.1992)(quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### Analysis

**A. Retaliation**

■ "In order to prove retaliation, a plaintiff must demonstrate: (1) that she was engaged in activity protected under Title VII; (2) that she was the subject of an adverse employment action; and (3) that there is a causal link between the protected activity and the adverse employment action." *Johnson v. United States Dep't of Health & Human Serv.,* 30 F.3d 45, 47 (6th Cir.1994). The Government does not appear to dispute that Hummel's allegations against Truehart in 1987 constituted protected activity. The Government also has not presented any evidence to dispute the fact that it denied Hummel certain training and overtime opportunities or that these denials constituted adverse employment actions. Lastly, the Government failed to rebut Hummel's evidence that the denials of training were based on a standing order not to give her training because she had reported Truehart's sexual assault. Therefore, the only issue presently before this Court is that of timeliness.

**1. Actionability of timely claims**

■ A plaintiff seeking to bring a Title VII action against the federal government must first exhaust her administrative remedies by seeking informal EEO counseling within forty-five days of the "matter alleged to be discriminatory" or the "effective date of the action." 29 C.F.R. § 1614.105(a)(1); *cf.* 42 U.S.C. § 2000e–12 (granting EEOC authority to issue procedural regulations to carry out Title VII provisions). EEOC regulations permit the forty-five day time period to be extended for several reasons, including the fact that the employee "did not know and reasonably should not have [ ] known that the discriminatory matter ... occurred" and "other reasons considered sufficient by the agency or the Commission." 29 C.F.R. § 1614.105(a)(2). Within thirty days of the initial contact, or within up to ninety days upon written agreement, the EEO counselor must conduct a final interview and send the complainant written notice of the right to file suit within fifteen days of receiving the notice. *See* 29 C.F.R. §§ 1614.105(d), (e). An employee's failure to seek timely counseling results in the dismissal of her Title VII claims. *See Benford v. Frank,* 943 F.2d 609, 612 (6th Cir.1991).

The only time limit which the Government alleges Hummel missed is the counseling requirement. The Government claims that "Ms. Hummel has not challenged any personnel action which allegedly occurred forty-five days before she contacted the EEO Counselor on November 3, 1997." (Def.'s Br. Supp. at 4.) However, Hummel presented evidence that she made at least one written request for training as recently as November 7, 1997. Although she had already sought EEO counseling on November 3, 1997, her first interview did not take place until November 25, 1997. In combination with her affidavit stating that she complained to her EEO counselor about "discrimination and retaliation which *was still taking place*," (Hummel Aff. ¶¶ 5–6, attached to Pl.'s Resp. Br. (emphasis added)), the evidence of a November 7 request creates an issue of fact with regard to whether Hummel sought timely EEO counseling for retaliatory denials occurring within

forty-five days prior to November 3, 1997, and those occurring during the course of her counseling. Therefore, the Court will deny summary judgment to the Government as to those claims. *See Dixon v. Anderson,* 928 F.2d 212, 216 (6th Cir.1991)(basing exception to statute of limitations on theory that each act in series of violations constitutes separately actionable violation, such that plaintiff may still file within limitations period which began to run after most recent violation, and noting that "[i]t is irrelevant that the employer has committed the same illegal act at other times prior to the beginning of the relevant limitations period").

## 2. Equitable tolling for untimely claims

■ [T]he same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States....

... [The Supreme Court has] allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. [The Court has] generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights.

*Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 95–96, 111 S.Ct. 453, 457–58, 112 L.Ed.2d 435 (1990)(footnotes omitted)(extending holding of *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 398, 102 S.Ct. 1127, 1135, 71 L.Ed.2d 234 (1982) from private employer cases to federal government cases); *see also Boddy v. Dean,* 821 F.2d 346, 350 (6th Cir.1987)(applying *Zipes,* in pre-*Irwin* case, to find counseling requirement from regulations also subject to equitable tolling). However, § 2000e–16(c), the statute of limitations on federal employee suits, "is a condition to the waiver of sovereign immunity and thus must be strictly construed," and courts should not extend equitable tolling to "a garden variety claim of excusable neglect." *Irwin,* 498 U.S. at 94, 96, 111 S.Ct. at 456, 458.

■ In *Cada v. Baxter Healthcare Corp.,* 920 F.2d 446 (7th Cir.1990), the Seventh Circuit distinguished three doctrines related to equitable tolling which are "frequently confused." *Id.* at 451. First, the court noted that "[t]he rule that postpones the beginning of the limitations period from the date when the plaintiff is wronged to the date when he discovers he has been injured is the 'discovery rule' of federal common law, which is read into statutes of limitations in federal-question cases ... in the absence of a contrary directive from Congress." *Id.* at 450. The discovery rule does not apply to postpone the accrual of Hummel's claims because she has not alleged that she did not know the Government denied her requests for training. *See Webb v. Indiana Nat'l Bank,* 931 F.2d 434, 436 (7th Cir.1991)(distinguishing discovery of injury for accrual purposes from possession "of information about whether the injury is actionable").

■■ *Cada* then said that "[t]olling doctrines stop the statute of limitations from running even if the accrual date has passed." 920 F.2d at 450. *Cada* distinguished between the two tolling doctrines of equitable estoppel, sometimes called fraudulent concealment, and equitable tolling. *Id.* at 451. The court stated that "[f]raudulent concealment in the law of limitations presupposes that the plaintiff has discovered, or, as required by the discovery rule, should have discovered, that the defendant injured him, and denotes efforts by the defendant—above and beyond the wrongdoing upon which the plaintiff's claim is founded—to prevent the plaintiff from suing in time." *Id.; see also EEOC v. Kentucky State Police Dep't,* 80 F.3d 1086, 1095 (6th Cir.1996)(quoting *Cada* with approval). By contrast, equitable tolling "permits a plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim" and "differs from [fraudulent concealment] in that it does not assume a wrongful—or any—effort by the defendant to prevent the plaintiff from suing." *Cada,* 920 F.2d at 451; *see also Kentucky State Police,* 80 F.3d at 1095 (quoting *Cada* with approval). Equitable tolling differs from the discovery rule "in

that the plaintiff is assumed to know that he has been injured ...; but he cannot obtain information necessary to decide whether the injury is due to wrongdoing and, if so, wrongdoing by the defendant." *Cada*, 920 F.2d at 451.

### a. Equitable estoppel or fraudulent concealment

In *Hill v. United States Department of Labor*, 65 F.3d 1331 (6th Cir.1995), the court applied the following requirements to a claim of tolling based on fraudulent concealment: " '(1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts.' " *Id.* at 1335 (quoting *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir.1975)).

 Under the first inquiry, "[a] deception regarding motive supports application of equitable tolling only where the deception conceals the very fact of discrimination." *Hill*, 65 F.3d at 1337. A defendant's failure to admit discrimination does not automatically toll the statute because it might constitute only the concealment of evidence, as opposed to the concealment of facts. *Id.* at 1336–37; *see also Gomez v. Great Lakes Steel Div. Nat'l Steel Corp.*, 803 F.2d 250, 254–55 (6th Cir.1986)(holding that unfulfilled promises to look into plaintiff's lack of promotion were insufficient for concealment and noting in dicta that "[p]erhaps a case for fraudulent concealment could have been made had Great Lakes actively misled Gomez by fabricating reasons for his lack of promotion").

 Hummel alleged in her pre-complaint summary that after her conversation with Waddell she "began to realize that all previous reasons by management to why I couldn't have training were possibly and probably incorrect." (Pl.'s Ex. D.) However, in her later affidavit, she states that she "was given no explanation why [she] should not receive" the training she requested. (Hummel Aff. ¶ 7.) Moreover, Hummel's counsel admitted at oral argument that her theory is one of knowing omission and that she will testify that her supervisors gave her no explanation for the denials of training. Therefore, the Court will grant the Government summary judgment on the issue of fraudulent concealment with regard to Hummel's untimely claims.

### b. Equitable tolling

 Hummel is entitled to equitable tolling only if a reasonable person in her position would not have known until the conversation with Waddell of the possibility of a retaliation claim. *See Cada*, 920 F.2d at 451. Moreover, unlike fraudulent concealment, the doctrine suspends the statute of limitations only "for such time as [is] reasonably necessary to conduct the necessary inquiry." *Id.*

Hummel admits knowing that training "requests by similarly situated employees including employees junior to me, were granted." (Hummel Aff. ¶ 6, attached to Pl.'s Resp. Br.) She also alleged in her EEO Complaint that her "training stopped shortly after the incident with PM Truehardt [sic] along with opportunities for advancement and [overtime]." (Pl.'s Ex. F.) However, the former admission relates more to potential age discrimination, and the latter admission, while relevant to a retaliation claim, would have been pure speculation in the absence of Waddell's admission. *See Walborn v. Erie County Care Facility*, 150 F.3d 584, 589 (6th Cir.1998)(holding that "fact that some of the allegedly retaliatory actions took place after [plaintiff] filed an EEOC charge is insufficient to establish the requisite causal connection"); *Abbott v. Federal Forge, Inc.*, 912 F.2d 867, 875 (6th Cir.1990)(noting that "post hoc, ergo propter hoc is not a rule of legal causation"). Therefore, the Court finds that a question of fact remains with regard to whether a reasonable plaintiff would have been on notice of Defendant's alleged retaliatory animus prior to October 15, 1997, and will deny summary judgment to the Government on the issue of equitable tolling with regard to Hummel's untimely claims.

### 3. Continuing violation claim

 The continuing violation doctrine may or may not provide an alternative basis

for Hummel to recover on some of her untimely retaliation claims to the extent they amount to a failure to promote claim.[2] The doctrine applies "[w]here the unlawful employment practice manifests itself over time, rather than as a series of discrete acts." *Webb v. Cardiothoracic Surgery Assoc.*, 139 F.3d 532, 537 (5th Cir.1998)(internal quotations omitted)(alteration in original); *accord Haithcock v. Frank*, 958 F.2d 671, 675–76 (6th Cir.1992)(applying continuing violation doctrine to series of acts culminating in plaintiff's resignation). At least one circuit "has held that 'failure to promote' cases are generally continuing in nature." *Scott v. City of Overland Park*, 595 F.Supp. 520, 526 (D.Kan.1984)(mem.op.); *see also Cedeck v. Hamiltonian Fed. Savings & Loan Ass'n*, 551 F.2d 1136, 1137 (8th Cir.1977)(finding allegation of failure to promote to be continuing where it concerned overall upward mobility). Hummel's allegations may fall within the serial violation category, which encompasses "a chain of similar discriminatory acts emanating from the same discriminatory animus." *Provencher v. CVS Pharmacy*, 145 F.3d 5, 14 (1st Cir.1998).

In order to proceed under a continuing violation theory, Hummel must show at least one discriminatory event that occurred within the statutory period and also that she sued as soon as a reasonable person would have realized she had a claim. *See Galloway v. General Motors Serv. Parts Operations*, 78 F.3d 1164, 1166 (7th Cir.1996); *Conlin v.*

*Blanchard*, 890 F.2d 811, 815 (6th Cir.1989)(holding that court should look at what event would have alerted average lay person to protect his rights)(internal quotations omitted). Hummel has been given an opportunity to amend her complaint to assert a proper continuing violation theory if she can do so in good faith.

**B. Sex-based discrimination**

■ To the extent Hummel alleges sex-based discrimination unrelated to her charges of retaliation, (*see* Compl. ¶¶ 14–15), the Court finds that she has failed to exhaust her administrative remedies. She has submitted an affidavit claiming that the current postmaster told her "that you have to sleep with the right people to get ahead." (Hummel Aff. ¶ 8, attached to Pl.'s Resp. Br.) However, Hummel's EEO complaint and the report of her EEO counselor show only allegations of retaliation. Therefore, the Court will dismiss all her allegations of sex-based discrimination, as opposed to her allegations of retaliation for making allegations of sex-based discrimination.

### *Conclusion*

For the foregoing reasons, the Court will grant in part and deny in part the Government's motion for summary judgment. The Court will grant the motion and dismiss Hummel's Complaint only with regard to the claim of sex-based discrimination. The

2. Hummel submitted evidence that she complained about denials of training which had continued throughout the years since the Truehart incident and which were still continuing at the time she filed her EEO complaint. (*See* Information for Precomplaint Counseling at 1, Pl.'s Ex. D (stating, "I am being denied fair and equal opportunities of overtime on my non-scheduled day off," and "I have been in the past and am currently being passed by for overtime on non-scheduled day"); EEO Compl. at 1, Pl.'s Ex. F (describing recent realization that she "was being denied training" for retaliatory reasons and seeking "the training I have been denied throughout the years, overtime pay which I have been denied through the years, and monetary compensation for the intentional emotional distress given to me and done to me over the years to present"); Pl .'s Ex. C (requesting training on 11/7/97, 10/17/94, 12/12/92, 2/7/92, 3/23/90, 9/8/89, and 6/17/89); EEO Counselor's Inquiry Report at 1, Def.'s Ex. 2 (stating that "Counselee

alleges Wes Williams, OIC at the time, Karen Higura [sic], OIC at the time, and all managers through the years until present as responsible officials").) This evidence might support a continuing violation claim. *See Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1108 (9th Cir.1998)(reversing summary judgment and finding possible continuing violation in light of statement in EEOC charge "that [plaintiff's supervisor]'s discriminatory behavior continued 'throughout [her] employment' ")(quoting EEO complaint)(second alteration in original); *Haithcock*, 958 F.2d at 675–76 (holding that liberal standard applies to reading of lay administrative complaints and that "a continuing violation theory can be maintained in federal court, even though it is not specifically alleged, as long as that theory is 'evidenced in the EEOC charge' ")(quoting *Sosa v. Hiraoka*, 920 F.2d 1451, 1458 (9th Cir.1990))(altering third word without demarcation).

Court will deny the motion and this case will continue with regard to the remaining claim of retaliation.

## ORDER

In accordance with the Opinion filed on this date,

**IT IS HEREBY ORDERED** that the Government's Motion to Dismiss or in the Alternative, Motion for Summary Judgment (docket no. 4) is **GRANTED IN PART and DENIED IN PART.** The motion is granted and Hummel's Complaint is **DISMISSED** only with regard to the claim of sex-based discrimination. The motion is denied as to the remaining claim of retaliation, and this case will continue.