David C. HARDY, Plaintiff,

v.

John E. POTTER, Post Master
General, United States Postal
Service, Defendant.

No. 01–CV–70087–DT.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 28, 2002.

David M. Liedel, William J. Liedel Assoc., Detroit, MI, for plaintiff.

Vanessa M. Mays, U.S. Attorney's Office, Detroit, MI, for defendant.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

### I. BACKGROUND/FACTS

Plaintiff David C. Hardy was employed as a supervisor at the Sterling Heights, Michigan Post Office. On May 27, 1997, Postmaster Gary Holbrook issued a Notice of Proposed Removal to the Plaintiff. On June 2, 1997, Plaintiff was found wandering on the Ambassador Bridge by United States Customs agents. Plaintiff was thereafter admitted to William Beaumont Hospital and discharged from the hospital on June 7, 1997. Upon discharge, Plaintiff was transported to Winona, Minnesota, to live with his mother. While in Minnesota, Plaintiff went to the Mayo Clinic for further medical examination.

On June 9, 1997, Plaintiff's daughter, Lynn Marie Liedel (formerly Lynn Marie Hardy), met with Postmaster Holbrook and told him that Plaintiff had been in the hospital. Ms. Liedel furnished Postmaster Holbrook with a durable power of attorney, dated June 13, 1997, giving Ms. Liedel authority over her father's affairs. Postmaster Holbrook later learned that Plaintiff was going to apply for disability retirement with the help of his daughter. Ms. Liedel applied for the disability retirement benefits in August 1997 on behalf of her father. Postmaster Holbrook held the removal action in abeyance pending Plaintiff's disability retirement application. Plaintiff's application for disability retirement was approved in September 1997. Postmaster Holbrook canceled the Notice of Proposed Removal.

In December 1997, Ms. Liedel visited Plaintiff in Minnesota. Ms. Liedel stated in her affidavit that she had learned that Postmaster Holbrook had issued a proposed removal but did not indicate the date she learned of the proposed removal. (See Liedel Aff., ¶ 11) It was during this visit with her father that Ms. Liedel learned of the reasons for her father's proposed removal. Ms. Liedel claims that at this time, Plaintiff had regained some of his memory and Ms. Liedel was able to ask questions about her father's employment history which led her to believe that Plaintiff had been discriminated against. (Liedel Aff., ¶¶ 13–16)

On January 20, 1998, Ms. Liedel sought EEO counseling on behalf of her father with respect to the May 27, 1997 proposed removal and filed an administrative complaint of discrimination based on the May 27, 1997 Notice. Ms. Liedel also cited to other incidents in December 1995 and December 1996 which Plaintiff claims represent a series of actions which occurred over a period of time, culminating in the May 27, 1997 notice.

In the EEO Complaint, Plaintiff claims that Postmaster Holbrook initiated the proposed removal which culminated a series of systematic actions by Postmaster Holbrook over a period of time. Plaintiff alleges that actions by Postmaster Hol-

brook resulted in Plaintiff having a nervous breakdown and being admitted to Beaumont Hospital. Plaintiff further alleges that Postmaster Holbrook mandated that Plaintiff stop using methadone as medication for his personal problems, in contradiction to the instructions by Plaintiff's doctors. Plaintiff claims that at no time did Postmaster Holbrook request documentation for Plaintiff's use of methadone nor was Plaintiff sent for a fitness for duty evaluation. Because of Plaintiff's use of methadone, Plaintiff claims Postmaster Holbrook scrutinized every detail of his work. Plaintiff claims that in December 1995, he was accused of stealing money from the Postal Service even though thirty people had access to the money. Plaintiff was suspended for playing music on the workroom floor. Plaintiff further claims that Kate Brooks, under the direction of Postmaster Holbrook, covertly catalogued nineteen frivolous allegations against Plaintiff without trying to rectify the allegations. In December 1996, Plaintiff claims he was denied a merit increase and bonus because Plaintiff had been suspended on two occasions. (EEO Complaint, Ex. 13(A), Plaintiff's brief)

On June 23, 1998, the Postal Service issued a final agency decision dismissing the administrative complaint stating that Plaintiff failed to contact the EEO counselor within 45 days of the alleged discriminatory action. Plaintiff filed a Notice of Appeal with the Equal Employment Opportunity Commission and asked for an extension of the time limits pursuant to 29 C.F.R. § 1614.105(a)(2). The EEOC did not extend the 45–day time limit and, instead, affirmed the Agency's decision and dismissed Plaintiff's complaint as untimely in a December 10, 1999 decision.

On January 7, 2000, Plaintiff filed a Motion for Reconsideration which was denied by the EEOC on October 10, 2000. Plaintiff timely filed the instant action on January 8, 2001. Plaintiff filed a two-count Complaint: 1) discrimination based on disability; and 2) retaliation discrimination. This matter is now before the Court on Defendant's Motion to Dismiss, or alternatively, for Summary Judgment.

It is noted that at the time Plaintiff's daughter filed the initial EEO Complaint in January 1998, Ms. Liedel was not married to Plaintiff's attorney, David Liedel. Plaintiff passed away on September 3, 2001 and his daughter is the Personal Representative of the Estate of David C. Hardy pursuant to probate proceedings in Filmore County, Minnesota.

## II. *ANALYSIS*

### A. *Standard of Review*

Fed.R.Civ.P.Rule 12(b)(6) provides for a motion to dismiss for failure to state a claim upon which relief can be granted. This type of motion tests the legal sufficiency of the plaintiff's Complaint. *Davey v. Tomlinson,* 627 F.Supp. 1458, 1463 (E.D.Mich.1986). In evaluating the propriety of dismissal under Rule 12(b)(6), the factual allegations in the Complaint must be treated as true. *Janan v. Trammell,* 785 F.2d 557, 558 (6th Cir.1986). If matters outside the pleading are presented in a Rule 12(b)(6) motion, the motion shall be treated as one for summary judgment under Rule 56(b) and disposed of as provided in Rule 56.

Rule 56(c) provides that summary judgment should be entered only where "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The presence of factual disputes will preclude granting of summary judgment only if the disputes are genuine and concern material facts. *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Although the Court must view the motion in the light most favorable to the nonmoving party, where "the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment must be entered against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548. A court must look to the substantive law to identify which facts are material. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

Given that the parties submitted exhibits to support their positions, the Court will consider Defendant's motion under Rule 56.

### B. *May 27, 1997 Notice*

#### 1. *45–Day Filing Requirement*

■ A federal employee's claim of employment discrimination may be brought under Title VII, 42 U.S.C. § 2000e–16(a) –(e). A federal employee must first exhaust his or her administrative remedies prior to bringing suit in federal court. *Brown v. General Serv. Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976). It is well established that relief under Title VII is ordinarily dependent upon the filing of a timely administrative charge or complaint. *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). A plaintiff seeking to bring a Title VII action against the federal government must first exhaust his/her administrative remedies by seeking informal EEO counseling within 45–days of the "matter alleged to be discriminatory" or the "effective date of the action." 29 C.F.R. § 1614.105(a)(1); 42 U.S.C. § 2000e–12 (granting EEOC authority to issue procedural regulations to carry out Title VII provisions). EEOC regulations permit the 45–day time period to be extended for several reasons, including the fact the employee "did not know and reasonably should not have known that the discriminatory matter … occurred" and "other reasons considered sufficient by the agency or the Commission." 29 C.F.R. § 1614.105(a)(2). An employee's failure to seek timely counseling results in the dismissal of his/her Title VII claims. See *Benford v. Frank*, 943 F.2d 609, 612 (6th Cir.1991).

Here, there is no dispute that Plaintiff did not seek EEO counseling within the 45–day time limit. The Notice of Proposed Removal was issued in May 27, 1997 and Ms. Liedel did not seek EEO counseling on behalf of her father until January 20, 1998. Plaintiff claims that because of his medical condition, it was not until December 1997 that his daughter learned of the discriminatory acts and equitable tolling should therefore apply to his case.

#### 2. *Equitable Tolling*

The Supreme Court has ruled that the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits

against the United States. *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 95–96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990). The Supreme Court extended the holding in *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 398, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) from private employer cases to federal government cases. The Supreme Court held that "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass" equitable tolling may apply. *Irwin,* 498 U.S. at 95–96, 111 S.Ct. 453. The Court has been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his/her legal rights. *Id.* The Supreme Court has warned however, that the statute of limitations on federal employee suits, found in § 20003–16(c), "is a condition to the waiver of sovereign immunity and thus must be strictly construed," and courts should not extend equitable tolling to "a garden variety claim of excusable neglect." *Id.* at 94, 96, 111 S.Ct. 453. (Plaintiff's citation to *Johnson v. Runyon,* 47 F.3d 911, 917 (7th Cir.1995) which states that the 45–day time limit should be liberally construed is not supported by the Supreme Court's statement cited in *Irwin.*) 29 C.F.R. § 1614.105(a)(2) states that an agency "shall extend the 45–day time limit ... when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them." 29 C.F.R. § 1614.102(b)(6) (1998) provides that the notice be posted and publicized at all times.

The Sixth Circuit has not ruled on the issue of whether equitable tolling is applicable where a plaintiff claims his/her mental abilities prevented him/her from filing within the 45–day limitations period. The First Circuit has concluded that there is no absolute rule that would require tolling whenever there is mental disability. *Lopez v. Citibank, N.A.,* 808 F.2d 905, 906 (1st Cir.1987). Federal Courts "have taken a uniformly narrow view of equitable exceptions to Title VII limitations periods." *Id.,* quoting *Earnhardt v. Puerto Rico,* 691 F.2d 69, 71 (1st Cir.1982). The burden of demonstrating the appropriateness of equitable tolling lies with the plaintiff. *Boos v. Runyon,* 201 F.3d 178, 185 (2d Cir.2000). The question of whether a person who is sufficiently mentally disabled to justify tolling is highly case-specific. *Id.* at 184, citing *Canales v. Sullivan,* 936 F.2d 755, 759 (2d Cir.1991) (instructing the district courts to look to "all the circumstances of the case" when determining whether equitable tolling due to mental illness is appropriate). Other Circuits have held that in a Rehabilitation Act suit against the government for discrimination on the basis of mental illness, that "mental illness tolls a statute of limitations only if the illness in fact prevents the sufferer from managing his affairs and thus from understanding his legal rights and acting upon them." *Miller v. Runyon,* 77 F.3d 189, 191 (7th Cir.1996); see also *Nunnally v. MacCausland,* 996 F.2d 1, 5 (1st Cir.1993) (in a Rehabilitation Act suit against the government for discrimination based on the basis of mental illness, that a plaintiff would be entitled to equitable tolling only if the plaintiff could demonstrate that he/she was "[un]able to engage in rational thought and deliberate decision making sufficient to pursue [her] claim alone or through counsel"); *Hood v. Sears Roebuck and Co.,* 168 F.3d 231, 233 (5th Cir.1999) (assuming equitable tolling applies to mental illness, equitable tolling did not apply because the plaintiff retained counsel before the limitations period expired); *Lopez,* 808 F.2d at 907 (assuming mental illness might sometimes toll the statute of limitations, where a

plaintiff has presented no strong reason why, despite the assistance of counsel, he was unable to bring suit). A district court case in this Circuit has adopted a narrower rule limiting equitable tolling to when the claimant has been institutionalized or adjudicated mentally incompetent. See *Bassett v. Sterling Drug, Inc.*, 578 F.Supp. 1244, 1248 (S.D.Ohio 1984).

▋ It appears that given the circumstances of a case, equitable tolling may apply where a plaintiff is unable to bring a complaint because of her/his mental illness. In this case, Plaintiff does not deny that the discrimination act occurred when the May 27, 1997 Notice of Proposed Removal was issued. Plaintiff's daughter claims that because of her father's mental condition, even though she did have notice of the May 27, 1997 Notice back in June 1997, she could not ascertain from her father until December 1997 that the May 27, 1997 Notice was a discriminatory act.

Plaintiff has submitted sufficient medical documentation that he was unable to handle his affairs because of his mental illness and that equitable tolling should apply. There is no dispute that Plaintiff was found wandering on the Ambassador Bridge on June 2, 1997, shortly after the Notice was issued on May 27, 1997. Plaintiff was admitted to Beaumont Hospital and discharged on June 7, 1997. Various notations from Plaintiff's hospitalization indicate that he was confused, demented and delirious. The reports also indicate that the onset of his dementia predated his admission to the hospital. The discharge diagnosis was "acute mental status change, rule out global amnesia, rule out early dementia disorder." (Medical records, Plaintiff's brief) Shortly thereafter, Plaintiff was sent to Minnesota to live with his mother because his daughter was unable to take care of him in Michigan. A power of attorney was executed giving her daughter authority over his affairs in June

1997. The Government argues that Plaintiff had the mental capacity to handle his affairs because he was able to execute a power of attorney. However, execution of the power of attorney also supports Plaintiff's argument that because he was unable to carry out his affairs at that time a power of attorney was necessary in order for someone else to handle his affairs.

While in Minnesota, Plaintiff went to the Mayo Clinic to further explore his medical condition. Plaintiff was diagnosed with frontal "lobe dementia with leukodystrophy." Upon discharge, Plaintiff's condition was "still demented. Will be living with his family." Plaintiff was listed as "*totally disabled*" for an "*indefinite period*" of time and not to return to work. (Plaintiff's brief, Ex. 4) It was not until December 1997 when Plaintiff's daughter had the opportunity to visit her father, that she was able to ascertain from him the circumstances surrounding the May 27, 1997 Notice. Ms. Liedel claims that although her father was still incapacitated, he was able to recollect the circumstances surrounding the May 27, 1997 Notice and upon her return from Minnesota, she immediately contacted the EEO counselor. (Liedel Affidavit, ¶¶ 13–16) In further support of Plaintiff's disability, his application for retirement disability was granted based on dementia. Plaintiff claims that the Government is now estopped from raising the argument that Plaintiff did not have a mental disability at the time the Notice was issued.

The Government argues that because Plaintiff had "free" legal advice from his son-in-law at the time the Notice was issued, Plaintiff cannot claim equitable tolling, as noted by some of the cases cited above. It is noted that based on Plaintiff's counsel's brief, counsel and Plaintiff's daughter were not married at the time Plaintiff was disabled. There is also no

indication that Plaintiff had engaged his current counsel at the time he was disabled. In any event, based on the medical records provided by Plaintiff, he was unable communicate the basis of the May 27, 1997 Notice because of his mental state until December 1997.

Based on the medical evidence submitted by Plaintiff and because the Government has adjudged Plaintiff as disabled based on dementia, Plaintiff was sufficiently mentally disabled at the time the May 27, 1997 Notice of Proposed Removal was issued. Equitable tolling would apply in this case as to the May 27, 1997 Notice.

## C. *December 1995 and December 1996 Incidents*

 Plaintiff claims a continuing violation as to the alleged discriminatory incidents which took place in December 1995 and December 1996. The continuing violation theory is a narrow, limited exception to the usual rule that the statute of limitations is triggered when the alleged discriminatory act occurred. *Haithcock v. Frank*, 958 F.2d 671, 677–78 (6th Cir. 1992); *Dixon v. Anderson*, 928 F.2d 212, 215–18 (6th Cir.1991). Where there is a series of ongoing and continuous discriminatory acts by an employer, such acts may be challenged in their entirety by the plaintiff employee as long as one of the continuing discriminatory act falls within the limitations period. *Haithcock*, 958 F.2d at 677. A court must determine the event that should have alerted the average lay person to protect his/her rights. *Id.*, 958 F.2d at 678; *Conlin v. Blanchard*, 890 F.2d 811, 815 (6th Cir.1989).

There are two categories of continuing violations in employment discrimination cases. The first category arises where there is some evidence of present discriminatory activity giving rise to a claim of a continuing violation, e.g., where an employer continues to impose disparate work assignments or disparate pay rates between similarly situated groups. *Id.* at 678. The rationale underlying the first category is that the employer commits an unlawful discriminatory act, such as giving unequal pay for equal work, each time the employer disburses the unequal pay. A continuing violation exists where a policy of discrimination is longstanding and manifested in discriminatory treatment in more than one instance. *Id.* Failure to promote cases may be continuing in nature. *Hummel v. Postmaster General*, 21 F.Supp.2d 758, 764 (W.D.Mich.1998). Past discrimination may be relevant to show motive and intent as to present practice or to establish a pattern or practice of discrimination or to show that present practices are designed to perpetuate or have the effect of perpetuating a past policy of discrimination. *United States v. Int'l Assoc. of Bridge, Structural and Ornamental Iron Workers, Local No. 1*, 438 F.2d 679, 683 (7th Cir.1971). At least one of the forbidden acts of discrimination must have occurred within the limitations period. *Id.*

The second category arises where there has occurred a longstanding, demonstrable policy of discrimination. Unrelated incidents of discrimination are insufficient. *Id.* There must be a continuing, over-arching policy of discrimination by the employer. *Id.* Where there has been a longstanding policy of discrimination, repeated attempts to gain employment or promotions may each trigger the running of a new time limitations period. *Dixon*, 928 F.2d at 217. There must still be a specifically alleged discriminatory event or act against the plaintiff that occurs within the relevant limitations period. *Id.* at 217–18.

 Here, the triggering event is the May 27, 1997 Notice. However, Plaintiff has not presented sufficient medical evidence to show that at the time of the incidents in December 1995 and December

1996, Plaintiff's mental capacity was so deteriorated that he was not aware of his right to seek an EEO counselor within 45 days of those incidents. Any discrimination claims from the December 1995 and December 1996 incidents must be dismissed as untimely and for failure to exhaust administrative remedies. It is noted that those incidents may be relevant for evidentiary purposes as they relate to the May 27, 1997 incident.

### D. *Failure to State a Claim/Summary Judgment*

#### 1. *Adverse Action*

The Government argues that Plaintiff has failed to state a *prima facie* case of discrimination under the Rehabilitation Act or of retaliation since no adverse action was taken against Plaintiff.

In order to establish a *prima facie* case of disability discrimination under the Rehabilitation Act, a plaintiff must show: 1) that he has a disability within the meaning of the Act; 2) that he is qualified to perform the essential functions of his job, with or without accommodation; 3) that he suffered an adverse employment decision; 4) that the employer knew or had reason to know of the disability; and 5) that the position remained open while the employer sought other applicants or that he disabled individual was replaced. *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1185 (6th Cir.1996).

A plaintiff must show the following in order to state a *prima facie* case of retaliation: 1) he was engaged in a protected activity; 2) the defendant had knowledge of the protected activity; 3) the defendant thereafter took adverse employment action against the plaintiff or subjected the plaintiff to severe or pervasive retaliatory harassment by a supervisor; and 4) a causal connection between the protected activity and the adverse employment action or harassment. *Morris v.*

*Oldham County Fiscal Court*, 201 F.3d 784, 792 (6th Cir.2000).

An adverse action must be "materially adverse." *Kocsis v. Multi-Care Management, Inc.*, 97 F.3d 876, 886 (6th Cir.1996). Reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims. *Yates v. Avco Corp.*, 819 F.2d 630, 638 (6th Cir.1987). In order to constitute a material adverse employment claim, the decision must result in a loss of pay, benefits, or duties. *Kocsis*, 97 F.3d at 886. Mere inconvenience or an alteration of job responsibilities does not constitute a material adverse action. *Id.* An immediate challenge of a transfer as a reflection of disability discrimination is premature. *Id.* at 887. Retaliatory harassment may be actionable as long as the adverse employment action suffered is material.

In this case, a Notice of Proposed Removal was issued on May 27, 1997. The Notice provided that Plaintiff was being notified of a proposed removal from the Postal Service no sooner than 30 days from the date of Plaintiff's receipt of the letter. (Ex. A, Defendant's brief) The Notice charges Plaintiff with failure to properly discharge his duties. The Notice cites three incidents. The first was that on April 18, 1997, an audit revealed that Plaintiff's driver's license had expired on March 19, 1997 and Plaintiff submitted two different claims for mileage, during the dates his license had expired, for which he was compensated. The second incident was that on March 31, 1997, Plaintiff requested a suspension for one of his employees. A disciplinary action was prepared and given to Plaintiff for issuance on April 10, 1997 but Plaintiff failed to issue the disciplinary action. The third incident was that on May 7, 1997, Plaintiff was sent a letter requesting medical documentation

for his absence from work from May 5, 1997 to the date of the Notice and that such letter was returned "no such number." Plaintiff was cited for failing to notify the Postal Service of a correct mailing address and failing to notify the Postmaster in a timely manner of Plaintiff's absence. (Ex. A, Defendant's brief)

Postmaster Holbrook's affidavit states that Plaintiff was never terminated and that the May 27, 1997 Notice of Proposed Removal was held in abeyance pending Plaintiff's disability application. (Holbrook Declaration, ¶ 9) The Notice was canceled based on the approval of the disability application. *Id.*

The Notice of Proposed Removal was essentially a warning letter to Plaintiff. No termination resulted from the Notice of Removal. Plaintiff cannot point to any adverse action by Defendant. Plaintiff cannot establish a *prima facie* case of discrimination under the Rehabilitation Act. As to the retaliation claim, based on the above, Plaintiff cannot show an "adverse action" by Defendant. Any complaint as to the Notice is premature or moot since no removal or termination occurred as a result of the Notice.

## 2. *Pervasive Retaliation*

 In a retaliation claim, a plaintiff can alternatively show an adverse action or "pervasive retaliation by a supervisor." *Morris,* 201 F.3d at 792. Retaliatory harassment by a supervisor does not, in and of itself, constitute a tangible employment action. *Id.* The action by the supervisor must be "severe or pervasive" as to alter the conditions of the victim's employment and create an abusive working environment. *Id.;* see *Jackson v. Quanex,* 191 F.3d 647, 658 (6th Cir.1999). Evidence of whether the conduct is so severe and pervasive as to create a hostile work environment "may include the frequency of the dis-

criminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it reasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). Simple teasing, offhand comments and isolated incidents, unless extremely serious, will not amount to discriminatory changes in the "terms and conditions of employment." *Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). The totality of the circumstances must be taken into account and not whether each incident or harassment standing alone is sufficient to sustain the cause of action. *Williams v. General Motors Corp.,* 187 F.3d 553, 562 (6th Cir.1999). The court should also consider whether the "constellation of surrounding circumstances, expectations, and relationships" formed a hostile or abusive workplace environment from both an objective and a subjective perspective. *Id.*

 As to "pervasive retaliation by a supervisor," Plaintiff points to the incidents in December 1995, December 1996 and the May 27, 1997 Notice of Proposed Removal to show "harassment" by his supervisor. Plaintiff claims that in December 1993, he engaged in a an EEO activity by being a witness to an EEO case, *Kinsley v. Post Office.* Plaintiff was a friend of Bill Kinsley. He was told by Mr. Thomas Newman to disassociate with Kinsley or "I will break you." Mr. Newman was Mr. Holbrook's boss. (Ex. 13A, Plaintiff's brief)

The Court has found that the May 27, 1997 Notice, as it pertains to Plaintiff's discrimination claim under the Rehabilitation Act, should be equitably tolled, that incident could also be considered under Plaintiff's retaliation claim. As to the De-

cember 1995 and 1996 incidents, although those claims are time-barred as to the discrimination claim, those incidents can be presented to show retaliation because the totality of the circumstances and surrounding circumstances, expectations and relationships must be considered in a retaliatory harassment claim. Because the EEOC has not investigated the matter and no discovery has taken place in this case, Plaintiff's retaliatory harassment is not ripe for summary judgment. It is noted that the Government has not argued that Plaintiff has failed to state a claim as to the other three factors of a *prima facie* retaliatory harassment claim. In any event, Plaintiff has submitted sufficient evidence at this stage to create a genuine issue of material fact as to the third prong of Plaintiff's retaliatory harassment claim. The three incidents occurring after the 1993 EEO activity could constitute "severe or pervasive" retaliatory harassment by Plaintiff's supervisor, depending on the facts uncovered during discovery or the EEOC's investigation.

The Court notes that Plaintiff requested to remand the matter to the EEOC should the Court decline to dismiss the case. At oral argument, the Government did not oppose Plaintiff's request to remand the matter. One of the purposes of the requirement to file an EEO counseling and to bring the matter before the EEOC is to give that body an opportunity to investigate and attempt conciliation before a court action is commenced. See *Chapman v. City of Detroit*, 808 F.2d 459, 460–62; *Baker v. Siemens Energy & Automation, Inc.*, 820 F.Supp. 1058 (S.D.Ohio 1993); *Pearce v. Barry Sable Diamonds*, 912 F.Supp. 149, 157 (E.D.Pa.1996); 42 U.S.C. § 2000e–5(b) and 29 C.F.R. § 1601.28(a)(2). The Court remands the matter as to the remaining claim of retaliation based on pervasive harassment.

## III. *CONCLUSION*

For the reasons set forth above,

IT IS ORDERED that Defendant's Motion to Dismiss and/or for Summary Judgment (**Docket Nos. 12–1 and 12–2, filed August 31, 2001**) is GRANTED IN PART and DENIED IN PART. Count I of Plaintiff's Complaint is DISMISSED. The retaliation claim in Count II based on pervasive harassment remains.

IT IS FURTHER ORDERED that the matter is REMANDED to the EEOC on the retaliation claim in Count II of Plaintiff's Complaint based on pervasive harassment only.